UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA TERRA FINA USA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>TERRAFINA, L.L.C., et al.,<br><br>Defendants. | Case No. 17-cv-03613 NC<br><br>**ORDER DENYING REQUEST FOR PRELIMINARY INJUNCTION; ORDER GRANTING MOTION TO DISMISS COUNTERCLAIM WITH LEAVE TO AMEND**<br><br>Re: Dkt. Nos. 11, 24 |

In this trademark infringement case, La Terra Fina USA, LLC seeks a preliminary injunction against Cormorant Group, LLC and TerraFina, LLC enjoining defendants from using the TerraFina name in connection with "dippers," chips, and crackers. In addition, La Terra Fina moves to dismiss defendants' breach of contract counterclaim against it.

For the reasons stated below, the Court DENIES La Terra Fina's request for a preliminary injunction. In addition, the Court GRANTS WITH LEAVE TO AMEND La Terra Fina's motion to dismiss defendants' counterclaim under Federal Rule of Civil Procedure 12(b)(6).

**I. BACKGROUND**

La Terra Fina manufactures, markets, and sells a variety of quiches, dips, spreads, sauces, and hummus. Dkt. No. 1 at 3. La Terra Fina was formed in 1991, and its trademarks are registered with the United States Patent and Trademark Office, as well as under California law. *Id.* at 3-4. La Terra Fina's products are sold throughout the United

Case No. 17-cv-03613 NC

States online and in brick-and-mortar stores like Costco and Kroger. *Id*. at 4. The dips produced by La Terra Fina have received numerous awards over the years. *Id*.

In 2006, defendant Cormorant applied to register a trademark for TerraFina[1] for "roasted nuts, flavored nuts, nut butters, roasted seeds, fruit and nut mixes, including trail mixes," for "confections," and for raw nuts and seeds. *Id*. at 5. TerraFina sells its products online and in brick-and-mortar stores. *Id*. at 6. La Terra Fina alleges that starting in December 2015, TerraFina began advertising its own "veggie chips, party mix, rice crackers, dried green beans, and yogurt covered pretzels." *Id*. at 6, 7. TerraFina asserts that it is selling the challenged "dipper" goods under its "Mirabel" mark. Dkt. No. 28 at 7. In addition, at oral argument, defendants' counsel conceded that its client sells rice crackers internationally with the TerraFina mark. Where the rice crackers are sold in the United States, however, the TerraFina mark is covered with a sticker. *See* Dkt. No. 28-1 at 3, 16.

The sale of these products by TerraFina is problematic because La Terra Fina originally opposed the TerraFina trademark, though the parties reached a settlement agreement on this issue on November 18, 2010, the Mutual Consent Agreement. *Id*. at 6; Dkt. No. 11-1 at 91-92. La Terra Fina alleges that the Agreement provided that in exchange for La Terra Fina withdrawing its opposition to TerraFina's trademark registration, Cormorant could only use the TerraFina trademark on specified permitted food products. Dkt. No. 1 at 7. Further, the Agreement provides that Cormorant would not sell "chips, dried or raw veggies, or dips" with the TerraFina mark. *Id*. at 7. TerraFina is now a registered trademark. *Id*.

La Terra Fina filed this action on June 22, 2017, and requested a preliminary injunction based only on its trademark infringement claim on August 10, 2017. Dkt. Nos. 1, 11. TerraFina opposes a preliminary injunction. Dkt. No. 29. TerraFina filed a breach of contract counterclaim. Dkt. No. 22. La Terra Fina moves to dismiss the counterclaim.

---

[1] For purposes of clarity, the Court will solely refer to defendants as "TerraFina" for the remainder of the order except where drawing a distinction between the two is necessary.

Case No. 17-cv-03613 NC 2

Dkt. No. 24. The Court held a hearing on both of these motions on September 27, 2017. Both parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c). Dkt. Nos. 9, 16.

## II. LEGAL STANDARD

### A. Preliminary Injunction

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

### B. Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the non-movant. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The Court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Although a complaint need not allege detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## III. DISCUSSION

First, the Court will weigh each of the *Winter* factors to decide whether a preliminary injunction should be granted. The Court will then consider the motion to

Case No. 17-cv-03613 NC  3

dismiss TerraFina's counterclaim.

**A.     Preliminary Injunction**

   **1.     La Terra Fina Has Shown That It Is Likely to Succeed on the Merits.**

To prevail on a claim of trademark or trade name infringement under the Lanham Act or common law, a plaintiff "must prove: (1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1144 (9th Cir. 2011) (quoting *Dep't of Parks & Rec. v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006)).

   **a.     La Terra Fina Has a Protectable Ownership Interest Over Its Mark.**

Both registered and unregistered trade names and trademarks are protected under the Lanham Act. *Halicki Films, LLC v. Sanderson Sales and Mktg.*, 547 F.3d 1213, 1225-26 (9th Cir. 2008); *see also GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 n.3 (9th Cir. 2000). "It is axiomatic in trademark law that the standard test of ownership is priority of use." *Sengoku Works v. RMC Int'l*, 96 F.3d 1217, 1219 (9th Cir. 1996). There is no dispute that La Terra Fina holds a valid trademark and that its trademark came into being before TerraFina did in 2005. Dkt. No. 11-1 at 91 (Mutual Consent Agreement). Thus, La Terra Fina has a protectable ownership interest in the La Terra Fina mark.

   **b.     La Terra Fina Has Shown a Likelihood of Confusion.**

In determining whether there is a likelihood of confusion, a court is to weigh the following factors: 1) the strength of the mark; 2) proximity of the goods; 3) similarity of the marks; 4) evidence of actual confusion; 5) marketing channels used; 6) type of goods and the degree of care likely to be exercised by the purchaser; 7) the defendant's intent in selecting the mark; and 8) likelihood of expansion of the product lines. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). The similarity of the marks, proximity of the goods and marketing channels used constitute "the controlling troika in the *Sleekcraft* analysis." *GoTo.com*, 202 F.3d at 1205. However, the analysis is not to be

Case No. 17-cv-03613 NC           4

considered in a mechanical fashion, and instead the importance of each *Sleekcraft* factor will vary in each particular case. *Brookfield Communs. Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1055 n.16 (9th Cir. 1999). A plaintiff need not satisfy all of the *Sleekcraft* factors. *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1125 (9th Cir. 2014).

### i. Strength of the Mark

First, in considering the strength of a mark, the Court considers the mark's commercial and conceptual strength. *See M2 Software, Inc., a Delaware corporation v. Madacy Entm't, a corporation*, 421 F.3d 1073, 1080-81 (9th Cir. 2005). "Trademarks are categorized as generic, descriptive, suggestive, and arbitrary or fanciful." *Id*. at 1080 (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)). "A generic mark is the least distinctive, and an arbitrary or fanciful mark is the most distinctive." *Id*. (citing *GoTo.com, Inc.*, 202 F.3d at 1207). "[A] mark's conceptual strength is proportional to the mark's distinctiveness." *Id*.

The Court agrees with La Terra Fina that its mark is a commercially strong one, and that it need not reach the level of worldwide profitability and recognition of Apple or Starbucks to be considered a "strong" mark. Dkt. No. 31 at 4. Further, the Court considers what level of protection the La Terra Fina trademark is entitled to based on its conceptual strength. As relevant here, "[a]n arbitrary mark consists of 'common words that have no connection with the actual product.' On the other hand, the less protected 'suggestive' category requires the exercise of some imagination to associate the mark with the good or service." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1211 (9th Cir. 2012) (internal citations omitted).

La Terra Fina may be considered a suggestive or possibly arbitrary mark. The Court is unconvinced that La Terra Fina is an arbitrary mark, as, from its packaging, it seems to want to market its good as coming directly from the earth. For example, its Spinach and Parmesan Dip displays a picture of raw spinach, and its Fiesta dip's packaging has printed on it a variety of fresh produce. Dkt. No. 11-1 at 57, 62. La Terra Fina's packaging therefore strengthens the Court's finding that its mark is suggestive, not

Case No. 17-cv-03613 NC 5

1 arbitrary. However, the Court agrees that at the very least, La Terra Fina is entitled to the
2 strong protection afforded to suggestive marks. Dkt. No. 11 at 12. As a result, this factor
3 weighs in favor of La Terra Fina.

### ii. Proximity of the Goods

Second, the Court considers the proximity of the goods. The party seeking a preliminary injunction "need not establish that the parties are direct competitors to satisfy the proximity or relatedness factor. Related goods (or services) are those 'which would be reasonably thought by the buying public to come from the same source if sold under the same mark.'" *Rearden*, 683 F.3d at 1212 (quoting *Sleekcraft*, 599 F.2d at 348 n.10). A court may consider the parties to be competitors if they sell goods in the same industry or if their goods are complementary. *See id*.

Here, the goods that TerraFina sells that La Terra Fina does not challenge are arguably not complementary to La Terra Fina's goods. After all, most people do not dip roasted nuts in artichoke dip, or spread nut butters on quiche. However, the products that are challenged—the so-called "dippers"—would be more likely to be dipped in La Terra Fina's dips. These products would be consumed together. Thus, the Court does consider these goods proximate and complementary, and under these circumstances, TerraFina is considered a direct competitor of La Terra Fina. This factor weighs in favor of La Terra Fina.

### iii. Similarity of the Marks

Third, the Court considers the similarity of the marks. The marks at issue in this case are very similar. They both contain the words "terra fina," which means "fine earth" in Italian. There are two differences between the text. La Terra Fina contains the article "la," meaning "the" in front of "Terra Fina." TerraFina has no article in front of it. Second, La Terra Fina separates the word "terra" and "fina," whereas TerraFina combines the two into one word. Based on this similarity, this factor weighs strongly in La Terra Fina's favor.

Case No. 17-cv-03613 NC 6

### iv. Evidence of Actual Confusion

Fourth, "a court conducting a trademark analysis should focus its attention on the relevant consuming public." *Rearden*, 683 F.3d at 1214. "The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks.'" *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002) (quoting *Dreamwerks Production Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998)). "Accordingly, trademark infringement protects only against mistaken purchasing decisions and not against confusion generally." *Rearden*, 683 F.3d at 1214 (citation, quotation marks, and brackets omitted). Litigants may satisfy likelihood of confusion by providing direct evidence of consumer confusion. Yet in *Rearden*, the Ninth Circuit concluded that non-consumer confusion may be relevant in three overlapping circumstances "where there is confusion on the part of: (1) potential consumers; (2) non-consumers whose confusion could create an inference that consumers are likely to be confused; and (3) non-consumers whose confusion could influence consumers." *Id*.

First, La Terra Fina gives a number of examples that purport to show consumer confusion. Its assertions overall fall short. As to its allegations that actual confusion has occurred because internet retailers or consumers turn up La Terra Fina products in response to the search term "Terrafina" or "Terra Fina," this is hardly evidence of confusion. Dkt. No. 11 at 15. As a matter of fact, search engines often turn up results for both the item as exactly typed into the search box as well as similar search terms. For instance, if a person was to search the term "terrafina" in Google, the first results page would include both the "TerraFina" and "La Terra Fina" websites. This is evidence of search engine thoroughness, not consumer confusion. Similar reasoning attaches to La Terra Fina's allegations regarding online articles or posts by consumers using "Terra Fina" or "terrafina" to refer to "La Terra Fina." The Court has reviewed La Terra Fina's attachments to its motion and reply, and find that while La Terra Fina is correct as to the existence of these misspellings, such instances do not demonstrate confusion, but merely

Case No. 17-cv-03613 NC 7

the fact that the general public occasionally inserts typographic errors into writing, or skips articles. At worst these instances deal with confusion generally, not with confusion in purchasing decisions. *Rearden*, 683 F.3d at 1214. There is no contextual evidence in these attachments that the consumers were confusing La Terra Fina with TerraFina, as all of the posts were referring to La Terra Fina's products. Dkt. No. 11-1 at 30-31, 33, 35-38, 40, 44. No statements were made about nuts, confections, or "dippers."

La Terra Fina presented the Court with two other examples that do show the existence of actual confusion. First, La Terra Fina states that it was contacted by a vendor after the 2017 Fancy Food Show in San Francisco regarding whether the challenged "dipper" goods that TerraFina had sold at the Show were La Terra Fina products. Dkt. No. 11 at 23. Second, on June 21, 2017, one of La Terra Fina's vendors received a payment deduction from its distribution partner that should have been deducted from one of TerraFina's payments. Dkt. No. 11 at 9. This latter instance does not help La Terra Fina because the payment deduction was "for nuts and seeds," not production of "dippers." *Id*. That particular confusion could have happened at any time in the last 12 years because that is how long TerraFina has been selling nuts and seeds. Moreover, TerraFina is expressly permitted to sell nuts and seeds under the 2010 Agreement between the parties. Dkt. No. 11-1 at 91-92. There is no demonstrated causal connection between TerraFina's purported wrongdoing and that particular instance of confusion.

As to the events of the Fancy Food Show, that is a closer call. As stated above, non-consumer confusion may be relevant where the non-consumers' "confusion could create an inference that consumers are likely to be confused." *Rearden*, 683 F.3d at 1214. The vendor that contacted La Terra Fina is not a consumer, but the fact that the vendor was actually confused as to whether La Terra Fina was selling the challenged "dipper" goods does support La Terra Fina's argument that it is possible that a consumer might be confused. *Id*. Yet this is the *only* instance that La Terra Fina has been able to show that arguably supports its contention that consumer confusion is may occur if TerraFina is not enjoined from selling "dippers." Thus, on balance, this factor is neutral; it neither benefits

Case No. 17-cv-03613 NC 8

1 nor harms either party.

**v. Marketing Channels Used**

Fifth, the Court considers the marketing channels used. "Convergent marketing channels increase the likelihood of confusion." *Sleekcraft*, 599 F.2d at 353. Both La Terra Fina and TerraFina products are sold on Amazon.com, among other places. Yet the Ninth Circuit recently found this factor to be of less importance because "[t]oday, it would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion." *Network Automation*, 638 F.3d at 1151. Therefore, even if this factor weighs in favor of La Terra Fina, it is not of great importance to the Court's determination of whether a preliminary injunction is warranted.

**vi. Type of Good and the Degree of Care Likely to be Exercised by Purchasers**

Sixth, the Court considers the type of good and degree of care likely to be exercised by purchasers. The lower the customer care the greater the likelihood of confusion. *Network Automation*, 638 F.3d at 1152 (citing *Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2004)). "Consumer care for inexpensive products is expected to be quite low." *Playboy*, 354 F.3d at 1028. Neither La Terra Fina's nor TerraFina's food products are luxury goods, so consumers are not expected to be taking great care in analyzing the products' packaging. Indeed, TerraFina does not dispute that the parties' products cost less than $20.00 per unit. Dkt. No. 28 at 12.

This argument is a double-edged sword for La Terra Fina, however. Consumers are not likely to be looking closely at the packaging on TerraFina's challenged "dipper" products, and especially not to the back of the package where TerraFina's name appears in fine print. *Id*. To the extent TerraFina's name merely appears on the back of the packaging of the challenged products that have the Mirabel mark on front, the Court does not find that this factor weighs in La Terra Fina's favor. *See* Dkt. No. 28 at 7. However, where TerraFina's mark appears plainly on the front of the package of a challenged

Case No. 17-cv-03613 NC 9

"dipper" product, this factor weighs in favor of La Terra Fina because consumers are more likely to be misled into believing that the product is a La Terra Fina product. *See e.g.*, Dkt. No. 11-1 at 18-19, 25. At the September 27, 2017, hearing on this motion, counsel for defendants represented that where the TerraFina mark has appeared on a challenged "dipper" product, that display has been inadvertent, and is no longer occurring.

### vii. Defendant's Intent in Selecting the Mark

Seventh, the Court considers TerraFina's intent in selecting its mark. La Terra Fina disputes that TerraFina had no ill intent in selecting its name upon its formation in 2005, but states no relevant facts in support of this bald assertion. Dkt. No. 11 at 18. Indeed, TerraFina asserts that it did not even know of La Terra Fina's existence when it selected its name. Dkt. No. 28 at 13. Moreover, La Terra Fina makes no allegations regarding how commercially well-known its mark was in 2005, so that it may make a claim that TerraFina would have known who it was. Dkt. No. 11 at 17-19. La Terra Fina's assertions regarding TerraFina's acknowledgment of La Terra Fina's seniority in 2010, and its recent alleged wrongdoing are irrelevant to the question of whether TerraFina had any ill intent in selecting its mark. This factor weighs in TerraFina's favor.

### viii. Likelihood of Expansion of the Product Lines

Eighth, the Court considers the likelihood of expansion of the plaintiff's product lines. "Inasmuch as a trademark owner is afforded greater protection against competing goods, a 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing. When goods are closely related, any expansion is likely to result in direct competition." *Sleekcraft*, 599 F.2d at 354 (citations omitted). "Where two companies are direct competitors, this factor is unimportant." *Network Automation*, 638 F.3d at 1153. Because the Court has found that TerraFina and La Terra Fina are direct competitors, *see* Part III.A.1.b.ii, "this factor is unimportant." *Network Automation*, 638 F.3d at 1153.

### ix. La Terra Fina Has a Strong Trademark Infringement Claim.

As provided above, to prevail on a trademark infringement claim, a plaintiff "must

Case No. 17-cv-03613 NC          10

prove: (1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Network Automation*, 638 F.3d at 1144. The first element favors La Terra Fina, because it has an undisputed trademark over its name. As to the second element, on balance, the *Sleekcraft* factors moderately favor La Terra Fina.

The following factors favor La Terra Fina to varying degrees: (1) the strength of the mark; (2) proximity of the goods; (3) similarity of the marks; and (4) the type of goods and the degree of care likely to be exercised by the purchaser, to the extent discusses in that section). The similarity of the marks, proximity of the goods and marketing channels used are the most important factors, and all favor La Terra Fina. *GoTo.com*, 202 F.3d at 1205. However, as noted above, the marketing channel are not as important in this case, and the Court found the actual confusion factor neutral. As to ill intent, TerraFina's lack of ill intent favors TerraFina in this calculus. Lastly, the likelihood of expansion is overall insignificant in this determination.

Taking all of the factors into account, the Court finds that La Terra Fina's trademark infringement claim against TerraFina is moderately strong.

### c. La Terra Fina Has Not Shown A Likelihood of Suffering Irreparable Harm.

A plaintiff seeking a preliminary injunction in a trademark case must establish a likelihood of suffering irreparable harm in the absence of the relief they seek. *Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1242 (9th Cir. 2013). "Those seeking injunctive relief must proffer evidence sufficient to establish a likelihood of irreparable harm." *Id.* at 21. Courts may not rely on "unsupported and conclusory statements regarding harm [a plaintiff] *might* suffer." *Id.* at 19 (internal quotation marks omitted; emphasis in the original). "[I]ntangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm." *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).

La Terra Fina falls short of establishing that absent a preliminary injunction, it

Case No. 17-cv-03613 NC 11

would suffer irreparable harm. Its claims of irreparable harm boil down to a loss of goodwill, which may qualify as irreparable harm. *Id*. Yet La Terra Fina's arguments of irreparable harm all overlap with its allegations that the Court found insufficient with regard to the existence of actual confusion. For example, its allegations of being charged for TerraFina's goods have to do with TerraFina's production of permitted goods under the 2010 Agreement, not production or sale of the challenged "dippers." Its claims regarding blogs referring to it as "TerraFina" or "Terra Fina" have nothing to do TerraFina's sale of "dippers." Lastly, La Terra Fina points to it having to tell a vendor that it was not selling TerraFina's "dippers" at the Fancy Food Show. This fact alone does not satisfy La Terra Fina's burden in showing a danger of suffering irreparable harm.[2]

Thus, because La Terra Fina is hard-pressed to demonstrate it would suffer *any* harm absent a preliminary injunction, it falls far short of demonstrating that it would suffer irreparable harm in the absence of the Court granting a preliminary injunction.

### d. The Remaining *Winter* Factors Do Not Favor Granting A Preliminary Injunction.

La Terra Fina has demonstrated that it has a moderately strong trademark infringement claim against TerraFina, but not that it would suffer irreparable harm absent a preliminary injunction. This second finding alone is sufficient to deny La Terra Fina's request for a preliminary injunction, because *all* of the *Winter* factors must be satisfied to grant a preliminary injunction. 555 U.S. at 20. Even considering the rest of La Terra Fina's arguments under the balancing of the equities and public interest factors of the *Winter* test, the Court would find La Terra Fina is not entitled to a preliminary injunction because La Terra Fina merely reiterates its largely unfounded consumer and non-consumer confusion allegations. *See* Dkt. No. 11 at 21-22.

---

[2] In its request for a preliminary injunction, La Terra Fina alleges that it "has had to explain to customers and partners that it is not associated with" TerraFina. Dkt. No. 11 at 21. It points to paragraphs 8-10 in the declaration of Stephanie Robbins to support that allegation. Those paragraphs say nothing about having to explain to *customers* that La Terra Fina is not associated with TerraFina. The statement in the motion is unsupported and the Court will give it no weight.

Case No. 17-cv-03613 NC 12

1   On the other hand, TerraFina does allege that it would be harmed by the Court's
2   granting of a preliminary injunction against it because, for example, it would have to
3   change the packaging of the challenged "dipper" goods. Dkt. No. 28 at 16. Though the
4   Court has found that La Terra Fina's trademark infringement claim is moderately strong,
5   this by no means suggests that the burden to TerraFina is irrelevant. TerraFina has not been
6   found liable of trademark infringement. Lastly, neither party presents persuasive argument
7   regarding the fourth *Winter* factor: the public interest.

**B.    La Terra Fina's Motion to Dismiss TerraFina's Counterclaim.**

In TerraFina's answer to La Terra Fina's complaint, it filed a counterclaim for breach of the Mutual Consent Agreement. Dkt. No. 14 at 12. TerraFina alleges as follows: under the Agreement, La Terra Fina "agreed that it would not 'challenge, oppose, contest, or impede' Cormorant's use or registration of the TERRAFINA Mark for certain uses." *Id*. TerraFina alleges that La Terra Fina petitioned the USPTO to cancel the TerraFina mark's registration, thus breaching the Agreement. *Id*. TerraFina alleges it has been damaged by La Terra Fina's breach. *Id*. La Terra Fina not only does not dispute these allegations, but also gives specific facts regarding its cancellation action against TerraFina. Dkt. No. 24 at 4.

Under California law, the elements of breach of contract are: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *Reichert v. Gen. Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968). Here, TerraFina has alleged the existence of a contract, the Mutual Consent Agreement; La Terra Fina's breach of the Agreement; and that TerraFina was harmed. However, TerraFina has not alleged that the Agreement was valid, or that TerraFina performed on the contract, or provided an excuse for its nonperformance. On this ground alone, the Court DISMISSES this claim WITH LEAVE TO AMEND.

Lastly, La Terra Fina argues that because TerraFina attacks the validity of the Mutual Consent Agreement in its answer that it cannot bring a counterclaim affirming its validity. Dkt. No. 24 at 5. Not so. Under Federal Rule of Civil Procedure 8(d)(3), "[a]

Case No. 17-cv-03613 NC         13

party may state as many separate claims or defenses as it has, *regardless of consistency*." (emphasis added).

## IV. CONCLUSION

For the reasons stated above, the Court DENIES La Terra Fina's request for a preliminary injunction. The Court GRANTS La Terra Fina's motion to dismiss TerraFina's counterclaim WITH LEAVE TO AMEND. TerraFina must file its amended counterclaim by October 11, 2017.

**IT IS SO ORDERED.**

Dated: September 27, 2017  _____

NATHANAEL M. COUSINS
United States Magistrate Judge